483 So.2d 761 (1986)
Salvatore James RAFFONE, Appellant,
v.
STATE of Florida, Appellee.
Joyce K. KNIGHTON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 83-2312, 83-2313.
District Court of Appeal of Florida, Fourth District.
February 5, 1986.
Rehearing and/or Certification Denied March 19, 1986.
Robert L. Bogen of Braverman & Holmes, Fort Lauderdale, for appellant-Salvatore James Raffone.
Richard L. Jorandby, Public Defender and Tatjana Ostapoff, Asst. Public Defender, *762 West Palm Beach, for appellant-Joyce K. Knighton.
Jim Smith, Atty. Gen., Tallahassee, Robert S. Jaegers and Richard G. Bartmon, Asst. Attys. Gen., West Palm Beach, for appellee.
HURLEY, Judge.
Defendants, convicted of various drug charges, assert that the trial court erred by failing to conduct a Richardson[1] inquiry. We agree and reverse.[2]
Pursuant to a demand for discovery, the state tendered a crime lab analysis of various items which had been seized from the defendants' residence. The report listed seventeen separate items and, immediately below, stated:
An examination conducted on the above mentioned items revealed the presence of hashish, herein defined as the resin extracted from the plant, Cannabis, in item # 1, revealed the presence of diazepam in item # 7, and revealed the presence of cocaine (85.4 grams) in item # 15.
On the first day of trial, during a sidebar conference involving an unrelated topic, the prosecutor handed a supplemental crime lab analysis report to defense counsel and to the court. The supplemental report indicated that Item # 13 ("Contents of glass jar, suspect cocaine.") had been tested and revealed the presence of 52.0 grams of cocaine. Although the initial tests had been performed eleven months prior to trial, the supplemental analysis was conducted the day before the trial began. The significance of the new finding was that it provided evidence which, by itself, would support a trafficking charge. (Section 893.135(1)(b)(1), Florida Statutes (1985), requires twenty-eight grams or more to support a trafficking charge.) More importantly, the new evidence was found inside the residence. This fact substantially weakened the defendants' planned defense of lack of constructive possession. The previously disclosed item # 15 ("Plastic bag with 2 other plastic bags containing suspect cocaine.") had been found in a briefcase in the attic over the garage. This formed the basis for the defense strategy that the defendants did not know about nor have control over the cocaine.
When the prosecutor handed over the new report, he stated, "I'm not introducing it in evidence, just providing it." The prosecutor further noted that he had just received the report, but he did not indicate when he had first become aware that an additional analysis was to be performed.
On the second day of trial, the state called the crime lab chemist and, during direct examination, began to question him about the newly-tested evidence. Counsel for both defendants immediately objected and moved for a mistrial. Defense counsel argued that, according to the obvious implication of the first report they received, the only item tested which revealed cocaine was Item # 15. They claimed that they had relied on the report as written and that now, in the midst of trial, the state was attempting to present new evidence of drug trafficking. They explained how the new evidence impacted on the defense strategy which had been planned after receipt of the first report. Additionally, defense counsel complained that the state had misrepresented its intentions during the previous day's sidebar conference.
The prosecutor countered that the substances seized had been available for independent inspection at all times prior to trial. In response to the accusation that he had broken his promise not to introduce evidence of the recently-tested cocaine, the prosecutor explained that he meant he would not attempt to introduce the actual report into evidence, but that he never promised not to introduce other evidence about the new analysis. During this exchange, the state's chemist spoke up and offered an explanation for the language in his first report.

*763 THE WITNESS: That's not the  That is just the way we word it. The only items that are tested  we can't write our report  it would be too long if we wrote every item tested and said negative, number 6, negative, number 7, negative, number 9. We only write down the ones that are tested and come up positive. Some of the items could have been tested. In this case they weren't.
* * * * * *
THE WITNESS: The only items that were tested in this case are the ones listed on the lab report.
The trial court, after listening to the above discussion, said: "You have got your objections on the record. I don't think you have been prejudiced." The court then, without conducting a Richardson inquiry, ordered the trial to proceed. Both defendants were convicted of the trafficking charge in addition to other charges.
Florida Rule of Criminal Procedure 3.220 imposes an affirmative and continuing duty on the state to disclose to defense counsel certain information within the state's possession or control, including:
Reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons.
Rule 3.220(a)(1)(x), Fla.R.Crim.P.; see also Odoms v. State, 431 So.2d 1041 (Fla. 4th DCA 1983) (Hurley, J., concurring) (state, to avoid trial by ambush, has an affirmative duty to furnish full discovery) (emphasis in original).
In Richardson v. State, 246 So.2d 771 (Fla. 1971), the Florida Supreme Court established the ground rules to be followed when it appears the state has violated its discovery obligations. It said the trial court, upon learning of the violation, must conduct an inquiry into all of the surrounding circumstances. Richardson, 246 So.2d at 775. "A Richardson hearing is designed to ferret out procedural prejudice occasioned by a party's discovery violation. In ascertaining whether this type of prejudice exists in a given case, the trial court must first decide whether the discovery violation prevented the aggrieved party from properly preparing for trial... ." Peterson v. State, 465 So.2d 1349, 1351 (Fla. 5th DCA 1985); see also Smith v. State, 372 So.2d 86 (Fla. 1979). Failure to conduct a full Richardson hearing is per se reversible error. Cumbie v. State, 345 So.2d 1061 (Fla. 1977); Hall v. State, 477 So.2d 572 (Fla. 4th DCA 1985).[3]
This court, in Donahue v. State, 464 So.2d 609 (Fla. 4th DCA 1985), acknowledged that "a Richardson hearing is an indispensable prerequisite to determining the admissibility of undisclosed evidence." In Donahue, we said the rule established in Richardson has as its purpose the prevention of chicanery and "legal gymnastics," and reiterated as mandatory the requirement that the trial court's inquiry "include such questions as
1) whether the violation was inadvertent or wilful;
2) whether the violation was trivial or substantial; and
3) most importantly, what effect, if any, did it have upon the ability of the (other party) to properly prepare for trial."
Donahue v. State, supra, at 611.
In addition, "such an inquiry should also determine 1) whether there are reasonable means available to avoid prejudice to the defendant and 2) what sanctions, if any, including the possible exclusion of the evidence, should be imposed as a result of the violation." Brey v. State, 382 So.2d 395 (Fla. 4th DCA 1980).
In the case at bar, the facts demonstrate a clear discovery violation. The state lulled the defense into believing that it would prove one thing and then, at trial, *764 it set out to prove another.[4] The initial lab report, which was the only such report issued prior to trial, indicated that all of the listed items had been tested and that only three had produced positive results. There is no indication in the record that either defendant had any knowledge that, in fact, only the three items had been tested. The first hint of new, independent evidence to support the trafficking charge came when the state, after the trial had begun, provided a supplemental report, barely hours old, stating that another item had been tested and that it revealed the presence of 52.0 grams of cocaine. Even then, the prosecutor stated, in carefully selected words, that he would not seek to introduce "it" into evidence.
On appeal, the state asserts three grounds for an affirmance. First, it claims that the issue was not preserved for appellate review because the defendants moved for a mistrial instead of objecting because of a discovery violation. This argument is without merit. While the defendants did not recite particular magic words, the manner in which they brought the matter to the trial court's attention was more than sufficient to apprise the court of the nature of their complaint. Also, other courts have proceeded to address Richardson-hearing issues which were apparently preserved by a motion for a mistrial. See, e.g., Torres v. State, 474 So.2d 335 (Fla. 3d DCA 1985); Matheson v. State, 468 So.2d 1011 (Fla. 4th DCA 1985).
The state's second argument, that no discovery violation occurred, is unpersuasive. It contends that a defendant cannot claim prejudice as a result of his own failure to obtain information which could have been obtained through reasonable and diligent discovery procedures. E.g., State v. Counce, 392 So.2d 1029 (Fla. 4th DCA 1981). The corollary proposition, however, which is more appropriate here, is that a claim of prejudice is not barred where reasonable diligence would not have led to discovery of the evidence. See Lavigne v. State, 349 So.2d 178 (Fla. 1st DCA 1977) (state failed to provide defendant with substance of oral statement by him, and failed to notify him that a witness it intended to call was present when statement was made; state's subsequent argument, that no discovery violation occurred because defendant knew of witness and failed to depose him, was rejected, as defendant had no reason to interview/depose witness absent the information not disclosed by state); Witmer v. State, 394 So.2d 1096 (Fla. 1st DCA 1981) (state failed to list rebuttal witness and then, in good faith, initially told defendant it would not call witness; held, even though defendant independently knew of witness and probable substance of testimony, state committed discovery violation requiring full Richardson hearing). In the case at bar, the language of the lab report would not have put a reasonable person on notice that some items remained untested. Furthermore, the prosecutor's comment at the time when the supplemental report was handed to defense counsel was misleading.
In sum, although it is true the seized drugs were available for testing by the defendants, there was no reason for them to do so. The initial report did not suggest incomplete testing, and more to the point, we believe that the defense is entitled to rely on the accuracy of such reports. Finally, the error was compounded by the manner in which the state disclosed the subsequent test.
The state's third response is that the exchange which took place after the defense objection satisfied the Richardson requirements. Again, the state's contention is not borne out by the record. The sole thrust of the discussion centered on whether there had been a discovery violation. After hearing respective counsel, the trial court ruled that the drugs had been available for testing for a substantial period of time and, therefore, the court said there was no prejudice. In other words, finding no violation the court saw no need to conduct a Richardson inquiry.
*765 Since it is clear that the state disclosed one set of results in the lab report and then attempted to prove something else at trial, we hold that the trial court was required to conduct a Richardson inquiry. Its failure to do so constitutes reversible error. Accordingly, the judgment and conviction are reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
DOWNEY and LETTS, JJ., concur.
NOTES
[1] 246 So.2d 771 (Fla. 1971).
[2] This court, on its own motion, consolidated the cases for disposition.
[3] In Hall v. State, supra, which is presently pending before the Supreme Court, this court asked, as a question of great public importance, whether the harmless error rule could be applied to a trial court's failure to conduct a Richardson inquiry.
[4] Cf. Carter v. State, 485 So.2d 1292 (Fla. 4th DCA 1986).