POLEN, Judge.
William Carter appeals his 1993 conviction for trafficking in cocaine. Based on a discovery violation, we reverse and remand for a new trial.
While in jail awaiting extradition on other matters, Carter met a confidential informant for the Drug Enforcement Agency (DEA). The informant contended Carter approached *1113 him about purchasing large amounts of cocaine, so the informant introduced appellant to an undercover DEA agent. After his release and several additional meetings, Carter began speaking directly to the DEA agent. According to this agent, appellant attempted to arrange a drug purchase, but eventually the amount of drugs involved fell below the minimum for DEA involvement. The appellant was then introduced to an Oakland Park Police detective who was also working undercover. Through this detective, Carter eventually took possession of five hundred grams of cocaine. Carter was arrested and tried for trafficking in cocaine.
At his trial, the appellant asserted entrapment. He claimed he initially contacted the DEA agent in an attempt to find investors for the agent’s financially troubled marina. But eventually, he was forced to buy the drugs through intimidation.
Pivotal to Carter’s defense were the initial conversations between himself and the DEA agent. According to Carter, these conversations would show that he initially intended to find financial investors for the agent, and not to set up a drug transaction. Many of these conversations were recorded; however, the current existence of the tapes is unclear. Over the course of the proceedings below, the DEA agent’s testimony as to the tapes’ existence changed several times. In March of 1991, the agent gave a sworn deposition in which he stated many of the conversations were taped. In a hearing in October of 1991, the agent changed his testimony by stating he never taped any of the conversations. Finally, during the trial in November of 1993, the agent testified that he had taped most of the conversations, but as part of DEA policy, he destroyed the tapes after his direct involvement ended.
During the trial, the defendant moved for a Richardson inquiry into the possible discovery violation surrounding the tapes. Richardson v. State, 246 So.2d 771 (Fla. 1971). The court refused to hold an inquiry. The court reasoned that because the agent initially acknowledged the tapes, the defense had sufficient notice of their existence, thus preventing any violation.
The jury found Carter guilty of trafficking in cocaine and he was sentenced to a mandatory minimum of 15 years in state prison and fined $250,000.00.
When a discovery violation is brought to the attention of the trial court, the court must conduct a hearing as to the circumstances of the violation and its potential prejudice to the defendant. Butler v. State, 591 So.2d 265 (Fla. 4th DCA 1991). Moreover, the trial court’s failure to hold an adequate Richardson inquiry may be grounds for a new trial. Smith v. State, 500 So.2d 125 (Fla.1986); Walker v. State, 573 So.2d 1075 (Fla. 4th DCA 1991).
The specific discovery rule in question is Florida Rule of Criminal Procedure 3.220(a)(l)(viii), which states:
(a) Prosecutor’s Obligation
(1) After the filing of the indictment or information, within fifteen days after written demand by the defendant, the prosecutor shall disclose to defense counsel and permit him to inspect, copy, test and photograph, the following information in the state’s possession or control:
(viii) Whether there has been any electronic surveillance, including wiretapping, of the premises of the accused, or conversations to which the accused was a party....
The state may well have violated this discovery rule by failing to turn over taped conversations to which appellant was a party. Under this rule, a prosecutor is obligated to disclose and permit defense counsel to inspect information in the state’s control. The command of rule 3.220(a) requires disclosure, as well as an opportunity to review. See Smith at 126. If the state fails to discharge its duty in this regard, the trial court must inquire into the circumstances of the discovery violation. The failure to provide Carter this opportunity was a discovery violation and required a Richardson inquiry.
Accordingly, we reverse for the trial court’s failure to conduct an inquiry into the possible prejudice Carter may have suffered from the discovery violation. If the tapes were destroyed, there may have been a viola *1114 tion of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and in that event the state must show their contents would not have benefited the accused. State v. Sobel, 363 So.2d 324 (Fla.1978). The protection of the accused’s due process rights require this showing. Id. at 328. We also note that DEA policy is insufficient grounds for the destruction of evidence. If the trial court on remand determines that discoverable evidence has been destroyed, it may then have to make further inquiry as to whether defendant’s due process rights have been violated. Sobel.
KLEIN and PARIENTE, JJ., concur.